| | | |
|---|---|---|
| NEW BEGINNING SANCTUARY,<br>A MISSOURI NOT-<br>FOR-PROFIT CORPORATION,<br>JAAM PROPERTIES LLC,<br>A MISSOURI LIMITED LIABILITY<br>COMPANY, and<br>ALON FISCH, AN INDIVIDUAL,<br><br>     **Plaintiffs,**<br><br>    **vs.**<br><br>CITY OF SPRINGFIELD, MISSOURI,<br>A MISSOURI MUNICIPAL CORPORATION<br><br>     **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 6:23-cv-03336-MDH** |

## <u>ORDER</u>

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 54). The matter has been fully briefed and is ripe for ruling. Defendant moves for summary judgment as to all counts and claims. Defendant argues there is no genuine issue of material fact in dispute. Defendant further argues the uncontroverted material facts establish that: (1) Plaintiffs have failed to demonstrate their requested accommodation was reasonable or necessary under both the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA")[1]; (2) Plaintiffs have failed to demonstrate they were subjected to disparate treatment under either the FHA and the ADA, because residential group homes are treated more favorably than other single-family residential

---

[1] Defendants further argue Plaintiffs failed to request an accommodation from the City's Residential Group Home spacing requirement under either the FHA or the ADA; even if Plaintiffs had requested accommodation from the Residential Group Home spacing requirement, that Plaintiffs have failed to demonstrate that such and accommodation was reasonable or necessary under both the FHA and the ADA. The requested accommodation at issue here is Plaintiffs' request to treat the sober living homes as "… the functional equivalent of a family for both zoning and occupancy purposes." It is apparent to the Court that no spacing requirement accommodation was requested.

1

uses under Springfield City Code and Plaintiffs have failed to produce any evidence of discriminatory purpose or intent; and (3) Plaintiffs have failed to demonstrate they were subjected to any disparate impact under either the FHA and ADA.

This case involves alleged violations of the Fair Housing Act ("FHA") and Americans with Disabilities Act ("ADA"). Defendant, the City of Springfield, prohibited Plaintiffs from operating an additional home for residents in recovery from drug or alcohol addiction by issuing a zoning violation. Following the violation, Plaintiffs requested an accommodation that the City treat the 1635 W Katella St. recovery home as a single-family use for zoning purposes. That request was denied.

## BACKGROUND

Plaintiffs are two related entities that operate a number of residential group homes in and around the Springfield, Missouri area. Jamm Properties is the for-profit LLC that owns and leases the homes to New Beginning Sanctuary who provides residential group home services. New Beginning Sanctuary has applied for and received 5 licenses to operate residential group homes. One of the locations that New Beginning Sanctuary received a license for a residential group home is 1635 W. Katella, Springfield, Missouri. (Exhibit 13). At some point in time, Plaintiffs began operating a second residential group home at 1629 W. Katella, next door to the licensed location at 1635 W. Katella. 1635 W. Katella and 1629 W. Katella are located in an R-SF, (Residential, Single Family) Zoning District.

The programs located at 1635 W. Katella and 1629 W. Katella are designed to house at least 10 residents in each home. All residents of the programs at 1635 W. Katella and 1629 W. Katella are in recovery from drug or alcohol use and therefore considered disabled.

2

Residential, Single Family zoning districts are governed by Section 36-380 of Springfield City Code. Single-family detached dwellings are a permitted use within R-SF districts. The term "family" is defined by Section 36-321 of Springfield City Code. Residential Group Homes are a permitted use within R-SF districts. Residential Group Homes are defined by Section 36-321 of Springfield City Code. Residential Group Home is defined as "A single-family-detached dwelling in which no more than ten people reside, comprised of the following: eight or fewer unrelated mentally or physically handicapped persons, no more than two persons acting as houseparents or guardians who need not be related to each other or to any of the mentally or physically handicapped persons, residing in the dwelling, and the children of the houseparents or guardians." Residential Group Homes are further governed by spacing requirements at Section 36-465 of Springfield City Code.[2]

On August 18, 2023, the City of Springfield issued a Zoning Violation Notice for 1635 W. Katella for violation of City Code Section 36-465, based on its proximity to the existing residential group home located at 1629 W. Katella. On August 21, 2023, Plaintiffs submitted a letter to the Zoning Inspector, Chad Stauffer, requesting a reasonable accommodation to treat Plaintiffs as the functional equivalent of a family for both zoning and occupancy purposes and permit them to live in a district zoned R-2. Plaintiffs requested that the City treat the 1635 W Katella St. house as a single-family use for zoning purposes. Defendant responded to the August 21, 2023, letter by email, requesting additional information and directing the reasonable accommodation request to

---

[2] Sec. 36-465. - Residential group homes**. (1) *Purpose.* It is necessary and desirable to provide suitable sites for residential group homes, as defined in section 36-321, definitions, in single-family residential areas provided that, in furtherance of the goals of de-institutionalization of handicapped persons and allowing residential group homes to be integrated throughout the community, residential group homes are not concentrated in particular neighborhoods.
(2) *Residential group home location requirement.* Residential group homes are permitted in the R-SF, R-TH, and R-MHC districts provided that no residential group home shall locate within a one-quarter mile radius of another residential or custodial group home.

then-Director of Building Development Services, Brock Rowe. On August 30, 2023, Plaintiffs resubmitted their request for reasonable accommodation to Brock Rowe. On October 2, 2023, Brock Rowe denied the requested accommodation.

In denying Plaintiffs' reasonable accommodation request, Director Brock Rowe stated that allowing the two homes to operate next to one another would "institutionalize handicapped residents by packing them in side by side," and cited the Defendant's "deinstitutionalization policy" at 36-465 as the basis for denial. Rowe informed Plaintiffs that enforcement of the zoning violation would be paused only to allow Plaintiffs time to market and sell 1635 W. Katella and acquire or lease a residence at least one-quarter mile away and required Plaintiffs to provide proof of such efforts within thirty days. Rowe asserted that it was not necessary for individuals with disabilities to live in homes located next to one another, and that residents could have an "equal opportunity" to live in the community if their housing were separated by at least one-quarter mile. Rowe claimed that granting Plaintiffs' requested accommodation would fundamentally alter its deinstitutionalization policy and impose an administrative burden, without identifying any land-use, safety, or service impacts associated with Plaintiffs' homes. At the end of the letter Rowe offered to refer the matter to the Administrative Review Committee, which Plaintiffs did not pursue prior to filing suit.

Plaintiffs present three expert witness reports. Stephen D. Villavaso, an expert in professional and urban planning, offers opinions on municipal zoning practices, the City's application of its ordinances, and the compatibility of the spacing requirements with accepted planning principles and DOJ/HUD guidance. (Doc. 56-1, Villavaso's Report). Andrea Stevens, a licensed real estate professional, analyzed residential housing market conditions in Springfield, including the availability of suitable properties during the relevant timeframe. (Doc. 56-2,

Stevens's Report). Dr. John Majer, an expert in the operation of residential recovery housing, provides an opinion regarding the therapeutic and operational requirements of recovery homes, as well as the practical implications of spacing requirements on their viability. (See Doc. 56-3, Majer's Report). Under *One Love Housing*, the expert reports will be considered in the disparate impact and disparate treatment claims and will be excluded in the failure to accommodate claim.[3]

In her report, Ms. Stevens stated that although Multiple Listing Service "MLS" reports, which real estate agents use to examine available house listings, showed between approximately 37 and 70 active listings in certain months, only a small" subset of those properties could realistically meet New Beginning Sanctuary's operational requirements. (Doc. 61-10 at 000193-207; 000194-195). After applying the criteria necessary for New Beginning Sanctuary's operations, including minimum bedroom capacity, property condition, price constraints, and eligibility for FHA financing, at any given time during early 2022, approximately five or fewer properties were realistically available for purchase. *Id*. at 000195. Eligibility for FHA financing was a necessary requirement for New Beginning Sanctuary, and many properties listed on the MLS were eliminated because they did not meet FHA standards for safety, habitability, or structural condition, including issues related to roofing, electrical systems, plumbing, or HVAC. *Id*. at 000195. Housing availability declined during the spring of 2022, with the number of new MLS listings decreasing significantly in May and June 2022, the period during which Plaintiffs were acquiring properties. *Id*. at 000195–000196.

---

[3] See Doc. 65. In considering reasonable accommodation claims, federal courts should limit their review to the materials that were presented to the local land use board, except in circumstances where the board prevents applicants from presenting sufficient information. *One Love Housing v. City of Anoka, Minnesota*, 93 F.4th 424, 431-32 (2024). This general rule however, does not apply to disparate impact and disparate treatment discrimination claims. *One Love Hous.*, 93 F.4th 424, 431 n.4 (8th Cir. 2024) (citing *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment*, 284 F.3d 442, 467 n.10 (3d Cir. 2002)).

In his report Mr. Majer analyzed: (1) how sober living homes provide therapeutic benefits to their residents and ameliorate the effects of their disabilities, (2) the proximity of New Beginnings Sanctuary sober living homes to each other and their structure, and (3) the critical mass (or number) of residents necessary for each sober living home to provide therapeutic benefits to its residents and allow them to use and enjoy the home. In that analysis, he presented evidence that sober living homes are non-institutional, community-based residences and that proximity does not undermine integration or deinstitutionalization principles (Doc. 61-9 at 000124–126).

In his report, Mr. Villavaso concludes that the City of Springfield has inappropriately utilized distance requirements and a municipal policy of "deinstitutionalization" to prevent individuals protected under the ADA from seeking reasonable accommodations and equitable access to housing, according to best planning and zoning practices.

## **STANDARD**

To establish discrimination under either the FHA or the ADA, plaintiffs may proceed under any or all of three theories: intentional discrimination (disparate treatment), disparate impact, and failure to make a reasonable accommodation. *One Love Housing, LLC v. City of Anoka*, Minnesota, 93 F.4th 424, 429 (8th Cir. 2024) (citing *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003)). *See also Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010). Due to the similarities between the FHA and the ADA, the Court will interpret them as one. *Id*.

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis*

6

*County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence.  Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249.  Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

Expert reports will be considered in the disparate impact and disparate treatment claims. The expert reports will be excluded in the failure to accommodate claim under *One Love Housing v. City of Anoka, Minnesota*, 93 F.4th 424, 431-32 (2024). See Doc. 65 at 4.

**<u>DISCUSSION</u>**

I.      <u>Failure to Accommodate</u>

The FHA requires an accommodation for persons with disabilities if the accommodation is (1) reasonable and (2) necessary (3) to afford persons with disabilities equal opportunity to use and enjoy housing. *One Love Housing, LLC v. City of Anoka, Minnesota*, 93 F.4th 424, 429 (8th Cir. 2024)(quoting *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 603-04 (4th Cir. 1997).

7

"Because the FHA's text evidences no intent to alter normal burdens, the plaintiff bears the burden of proving each of these three elements by a preponderance of the evidence." *Id*.

Defendant argues that the uncontroverted material facts establish that (1) Plaintiffs have failed to demonstrate their requested accommodation was reasonable or necessary, (2) that Plaintiffs did not request an accommodation from the City's Residential Group Home spacing requirement, and (3) even if Plaintiffs had requested accommodation from the Residential Group Home spacing requirement, the Plaintiffs have failed to demonstrate that such an accommodation was reasonable or necessary.

The requested accommodation at issue here is Plaintiffs' request to treat the sober living homes as "… the functional equivalent of a family for both zoning and occupancy purposes." It is apparent to the Court that no spacing accommodation was requested.

Necessity

Defendant argues this accommodation is not necessary because Springfield City Code already provides for the presence of residential group homes within single-family residential districts. Defendants reason this section of the Code already provides for the accommodation requested by Plaintiffs and thus the requested accommodation is not necessary. Further, Defendant argues accommodation was only requested when economic conditions led Plaintiffs to wish to establish two Residential Group Homes next to each other. Plaintiffs argue the requested accommodation is necessary because Defendant's denial displaces Plaintiffs' residents with disabilities from stable recovery housing in a constrained market where suitable alternative housing is not realistically available, thus substantially impairing their ability to obtain and maintain housing on equal terms.

Necessity does not require that an accommodation be the only possible means of housing, nor does it turn on the provider's convenience or preference. Rather, the inquiry focuses on whether, without the accommodation, the challenged rule or practice would deny or significantly impair housing opportunity for people with disabilities. *Essling's Homes Plus, Inc. v. City of St. Paul*, 356 F.Supp.2d 971, 984 (D. Minn. 2004). In *Essling's Homes Plus*, the city argued that the requested accommodation was motivated by convenience rather than necessity. 356 F.Supp. 2d at 980. The court rejected that argument, explaining that the proper inquiry is whether the accommodation would provide a meaningful benefit to disabled residents' housing opportunity and prevent exclusion or displacement. *Id*. Because the plaintiffs presented evidence that denial of the accommodation would impair housing access for disabled residents, the court held that necessity presented a genuine issue of material fact not suitable for summary judgment. *Id*.

Because expert opinion is excluded in the failure to accommodate claim, the Court will not consider the arguments made as to the application of ordinances, housing market conditions, or the therapeutic and operational requirements of recovery housing. However, as a matter of common sense, the denial of the accommodation clearly would cause displacement of the residents and impair their housing access. Therefore, the Court concludes that necessity presents a genuine issue of material fact not suitable for summary judgment.

<u>Reasonableness</u>

Above, the Court found that necessity presents a genuine issue of material fact. Therefore, it is not necessary to analyze the reasonableness for MSJ purposes as both prongs of the test cannot be satisfied. Therefore, Defendant's Motion for Summary Judgment as to the Failure to Accommodate claim is hereby **DENIED**.

II.     <u>Disparate Treatment</u>

Defendant argues Plaintiffs have failed to demonstrate they were subjected to disparate treatment in that the uncontroverted material facts demonstrate that residential group homes are treated more favorably than other single-family residential uses under Springfield City Code, and that Plaintiffs have failed to produce any evidence of discriminatory purpose or intent. Plaintiffs argue that the City treated Plaintiffs' housing less favorably because of the residents' disabilities by selectively classifying and regulating sober living homes as "Residential Group Homes," while declining to impose comparable restrictions on similarly situated non-disabled group living arrangements.

The FHA prohibits municipalities from discriminating in the terms, conditions, or privileges of housing because of disability. 42 U.S.C. § 3604(f)(2). To establish a prima facie case of discrimination under the FHA, a plaintiff may show either disparate impact or disparate treatment. Disparate treatment occurs when a similarly situated disabled individual or group is treated differently because of disability compared to less- or non-disabled individuals. *Peebles v. Potter*, 354 F.3d 761 (8th Cir. 2004). In the zoning context, courts focus not on labels alone, but on how a municipality applies its zoning classifications in practice. See *One Love Hous.*, 93 F.4th at 429–32.  Plaintiffs must show that the City treated them less favorably than others based on their disability. *Metropolitan Omaha Property Owners Association, Inc., v. City of Omaha*, 991 F.3d 880, 888 (8th Cir. 2021).

Plaintiffs argue other shared living arrangements, including student housing, roommate households, short-term rentals and a development 'Eden Village' are functionally similar and treated more favorably than Plaintiffs because their residents aren't in recovery.  (Doc 61 at 24). Defendant differentiates each type of housing and argues that every example falls under a different

10

classification in the City Code and thus are not functionally similar. Further, Defendant argues every example is also subject to spacing requirements or other geographical barriers under the Code.[4] The Court agrees. Plaintiffs have failed to establish they are being treated differently based on the disability status of Plaintiffs' residents. The Motion for Summary Judgment on the Disparate Treatment claim is hereby **GRANTED**.

III.    <u>Disparate Impact</u>

Defendant argues that the uncontroverted material facts establish the spacing rule promotes integration and prevents institutionalization and Plaintiffs have failed to demonstrate they were subjected to any disparate impact. Plaintiffs argue that City's spacing requirement for Residential Group Homes has a disparate impact on individuals with disabilities because it disproportionately restricts housing opportunities for people in recovery, causes displacement in a constrained housing market, and is not supported by evidence that the rule is necessary to achieve a legitimate, nondiscriminatory land-use objective.

A plaintiff establishes a prima facie disparate-impact claim by showing that a challenged policy actually or predictably results in a significantly adverse effect on housing opportunities for a protected group. *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 575–76 (2d Cir. 2003). Disparate impact may be proven through statistical or non-statistical evidence, including evidence of displacement, reduced housing availability, or exclusionary effects. *Id*. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to show that the challenged policy is necessary to achieve a substantial, legitimate, nondiscriminatory interest. *Id*. If such an interest

---

[4] Short-term rentals house transient guests as opposed to long-term residents. Communal student housing is not an allowed use in single-family residential zones. Eden Village operates what are known as "tiny home communities" in the terminology of Springfield's zoning code Tiny-home communities differ from traditional single-family neighborhoods in the density of dwelling units, not in the number of people living in each dwelling unit.

11

is shown, the plaintiff may still prevail by demonstrating that the interest could be served by less discriminatory alternatives. *Id*.

At this stage, Plaintiffs present, and the parties agree that New Beginning Sanctuary's acquisition of 1629 W. Katella Street occurred in the context of a constrained housing market and was driven by the limited availability of suitable properties rather than any intent to cluster or concentrate recovery housing. (Doc. 64 at ¶52). Additionally, the parties agree that the purchase of 1629 W. Katella Street was motivated by the fact that it was one of the few properties available at the time that met New Beginning Sanctuary's operational and financing requirements. *Id*. at ¶53.

In rebuttal, Defendants argue the spacing rule promotes integration and prevents institutionalization. Plaintiffs present expert testimony which a trier of fact could conclude that sober living homes are non-institutional, community-based residences and that proximity does not undermine integration or deinstitutionalization principles (Doc. 61-9 at 000124–126). Therefore, there are material facts in dispute for this Disparate Impact claim. The Motion for Summary Judgment on the Disparate Impact claim is hereby **DENIED**.

## <u>CONCLUSION</u>

Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes genuine disputes of material fact exist as to Plaintiffs' claims for Failure to Accommodate and Disparate Impact. However, the Court further concludes that no genuine dispute of material exists as to the Disparate Treatment claim.

Because Plaintiffs have failed to meet their burden on the Disparate Treatment claim, Defendant is entitled to judgment as a matter of law. Summary judgment as to the Disparate Treatment claim is hereby **GRANTED**.

12

Summary judgment as to the Failure to Accommodate and Disparate Impact claims is hereby **DENIED**.

**IT IS SO ORDERED.**

Date: May 26, 2026

/s/ *Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

CUTS

~~Where the accommodation is granted, a failure to accommodate claim must fail See *Fedynich v. Stalkfleet*, 784 F.Supp.3d 1146, 1166 (N.D. Iowa 2025)(citing *Groteboer v. Eyota Econ. Dev. Auth.*, 724 F. Supp. 2d 1018, 1025 (D. Minn. 2010)). Springfield City Code already allows for the presence of residential group homes within single family residential districts. Therefore, accommodation from the definition of family found in the zoning code is not necessary to make single family residential districts available to the individuals served by Plaintiffs.~~

~~Further, the undisputed facts show that Plaintiffs have several Residential Group Homes in the City of Springfield without modification of Springfield's existing zoning regulations. The rationale for this accommodation is that economic conditions led them to wish to establish two Residential Group Homes next to each other. Plaintiffs' own long history of operation in the City of Springfield, with no modification of zoning code, demonstrates that no accommodation is necessary.~~

~~Under a disparate-impact theory, the plaintiff must demonstrate that the challenged action had a greater adverse impact on a protected group than on others. *Lapid Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442, 445 (3d Cir. 2002)~~

Reasonableness rule

~~The requested accommodation at issue here is Plaintiffs' request to treat the sober living homes as "… the functional equivalent of a family for both zoning and occupancy purposes."~~

14

Defendant argues this accommodation is not ==reasonable== because it would fundamentally alter the nature of Springfield's zoning regulations and render single-family zoning meaningless in the City of Springfield. Plaintiff argues the requested accommodation was reasonable because treating 1635 W. Katella as the functional equivalent of a single family residence preserves residential use, imposes no land use or administrative burden, and would not "institutionalize" residents.

The determination of whether an accommodation is reasonable involves balancing the needs of the parties. In determining whether the reasonableness requirement has been met in this type of case, the court weighs the extent to which the accommodation imposes undue financial and administrative burdens or requires a fundamental alteration in the nature of zoning regulations, and the benefits that the accommodation would provide to the disabled. *One Love Hous.*, 93 F.4th at 432. The accommodation is considered reasonable if it is both efficacious and proportional to the costs of implementation. *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002); *Wisconsin Community Services v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006). An accommodation is unreasonable if it imposes undue financial or administrative burdens or requires a fundamental alteration in the nature of the program or policy. *Id.*

[==analysis== on whether undisputed facts show reasonable] then go on to disparate treatment – ==***==also need to see double check undisputed facts are developed sufficiently

FROM EXPERT STEVENS, CANT BE USED IN FAILURE TO ACCOMMODATE

Further, the parties agree that New Beginning Sanctuary's acquisition of 1629 W. Katella Street occurred in the context of a constrained housing market and was driven by the limited availability of suitable properties rather than any intent to cluster or concentrate recovery housing. (Doc. 64 at

15

~~¶52). Additionally, the parties agree that the purchase of 1629 W. Katella Street was motivated by the fact that it was one of the few properties available at the time that met New Beginning Sanctuary's operational and financing requirements.~~ *Id.* at ¶53

[ALT if going to deny disp treatment] Plaintiff's argue the heightened regulation is triggered by the disability status of the residents because a "Residential Group Home," classification is defined by residents' disability status—namely, being individuals in recovery.

16